UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
                                                                    :
CONEY ISLAND AUTO PARTS UNLIMITED, INC.,                            :
                                                                    :                13-CV-1570 (ARR) (VVP)
                                        Plaintiff,                  :
                                                                    :                NOT FOR ELECTRONIC
                -against-                                           :                OR PRINT PUBLICATION
                                                                    :
CHARTER OAK FIRE INSURANCE COMPANY,                                 :                OPINION AND ORDER
                                                                    :
                                        Defendant.                  :
                                                                    :
------------------------------------------------------------------- X

ROSS, United States District Judge:

Plaintiff Coney Island Auto Parts Unlimited, Inc. brings this action against defendant Charter Oak Fire Insurance Company. Plaintiff seeks a declaratory judgment establishing that its insurance policy issued by defendant covers the damages resulting from a collapse of the concrete floor at plaintiff's premises. Following discovery, both parties have brought cross-motions for summary judgment. For the reasons set forth below, I find that the "earth movement" exclusion in the insurance policy precludes coverage for the damage at issue. Accordingly, defendant's motion for summary judgment is granted, plaintiff's motion for summary judgment is denied, and the complaint is dismissed.

## BACKGROUND

**I. Plaintiff's Insurance Claim**

Plaintiff is a reseller and distributor of automotive replacement parts with its principal place of business in Brooklyn, New York. Pl.'s Local Rule 56.1 Statement of Undisputed Facts ("Pl.'s Facts"), Dkt. #34, Ex. 26, ¶ 11. One of plaintiff's subsidiary companies, Chester Auto Parts, Inc., operates a warehouse for auto parts at 1827-1831 Pitkin Avenue, Brooklyn, New

1

York (the "Pitkin Avenue Premises"). Id. ¶¶ 4-5, 10-12.

Defendant is an insurance company incorporated under the laws of Connecticut with its principal place of business in Hartford, Connecticut. Notice of Removal, Dkt. #1, ¶ 6. It is undisputed that defendant issued a commercial insurance policy to plaintiff (the "Policy"), effective July 19, 2011 to July 19, 2012, which covered the Pitkin Avenue Premises, among other locations. Pl.'s Facts ¶¶ 1-3, 5; Def.'s Local Rule 56.1 Statement of Undisputed Facts ("Def.'s Facts"), Dkt. #37, ¶ 1.

Plaintiff asserts that, on or about December 19, 2011, a portion of the concrete floor collapsed at the Pitkin Avenue Premises. Pl.'s Facts ¶ 18; Def.'s Facts ¶ 5. On the same day, the New York City Department of Buildings issued a vacancy order for the Pitkin Avenue Premises. Pl.'s Facts ¶ 20. On or about December 21, 2011, plaintiff, through its broker, submitted a claim to defendant seeking recovery for damage caused by the collapse of the concrete floor. Pl.'s Facts ¶ 21; Def.'s Facts ¶ 6. In a letter dated December 27, 2011, defendant advised plaintiff that it would investigate the claim and reserved the right to deny coverage for all or part of the loss at a future date. Decl. of Rippi Gill ("Gill Decl."), Dkt. #40, Ex. C.

Defendant retained a structural engineer, Steven M. McEvoy, to investigate the claim. Def.'s Facts ¶ 8. In a report dated January 3, 2012, McEvoy stated that when he inspected the Pitkin Avenue premises, he observed that one of the concrete floor slabs in the front half of the building had collapsed and dropped approximately 10 to 14 inches. Gill Decl., Ex. D, at ECF 3. McEvoy found that the building had "pre-existing construction flaws and settlement" dating back to its construction in 1987. Id. He stated:

> The front section of this building was constructed over the foundation of a previous building. The foundation had been filled with soil and the concrete filled sonotube extends down to a stable and/or an undisturbed base. Over time the uncompacted soil settled

2

and created a void under the concrete slab. The poured concrete
slab was installed without reinforcing throughout and was unable
to resist the stress developed as an unsupported concrete slab.

Id.

On January 16, 2012, plaintiff's insurance adjuster Adam Sitt sent a letter to defendant asserting that the Policy covered the claimed loss. Decl. of Eran D. Grossman ("Grossman Decl."), Dkt. #34, Ex. N. Sitt stated that, in the area where the concrete floor collapsed, plaintiff had stored steel racks with auto parts weighing an estimated two to three tons. Id. Sitt asserted that the loss fell under a provision of the Policy that covers damage from a collapse caused by the "weight of people or personal property." Id.

In a letter dated January 24, 2012, defendant informed plaintiff that it would not cover the damage resulting from the collapsed floor. Gill Decl., Ex. H. The letter stated: "[W]e have verified that the collapse to your described premises was due to the uncompacted soil settling and creating a void under the concrete slab, along with the poured concrete slab being installed without sufficient reinforcing." Id. Based on this determination about the cause of the collapse, defendant concluded that the Policy's "earth movement" exclusion barred coverage. Section B of the Policy, entitled "Exclusions," provides, in relevant part:

> 1. We will not pay for loss or damage caused directly or indirectly
> by any of the following. Such loss or damage is excluded
> regardless of any other cause or event that contributes concurrently
> or in any sequence to the loss . . . .
>
> b. Earth Movement
>
> (1) Any earth movement (other than "sinkhole collapse") whether
> natural or man made, including but not limited to earthquake, mine
> subsidence, landslide, or earth sinking, rising or shifting. But if
> earth movement results in fire, or explosion, we will pay for the
> loss or damage caused by that fire or explosion.

Gill Decl., Ex. A, at ECF 28. Defendant's letter stated that other provisions of the Policy also

3

required denial of plaintiff's claim, including exclusions for loss due to "collapse of buildings," "wear and tear," and "settlement, cracking, shrinking, or expansion." Gill Decl., Ex. H.

## II.     The Instant Litigation

In January 2013, plaintiff brought suit against defendant in New York Supreme Court, Kings County.[1] Dkt. #1. Defendant removed the suit to this court in March 2013, asserting federal jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332. Id.

Following discovery, plaintiff has moved for summary judgment. Plaintiff seeks a declaratory judgment establishing that the damage from the collapse of the concrete floor at the Pitkin Avenue Premises is a covered loss under the Policy. Dkt. #34. Defendant has cross-moved for summary judgment dismissing the complaint and a declaration that defendant has no obligation to plaintiff under the Policy for any damage alleged in the complaint. Dkt. #36. In support of their motions, both parties have submitted expert reports and other evidence concerning the cause of the collapse.

### A.     Plaintiff's Expert Report

Plaintiff hired Mohammed Alauddin, who is licensed as a professional engineer in New York, to inspect the Pitkin Avenue Premises and determine the cause of the floor collapse. Aff. of Mohammed Alauddin ("Alauddin Aff."), Dkt. #34, Ex. 22, ¶¶ 1, 3. In a "Building Inspection Report" dated August 19, 2013, Alauddin stated that he observed that a section of floor approximately 2,000 square feet in size had collapsed approximately 12 inches. Grossman Decl., Ex. I, at 2. Alauddin stated that, under the collapsed concrete slab, the soil consisted of "fine materials with debris backfilled prior to existing building construction, which is not acceptable to

---

[1] Plaintiff initially named an additional defendant, The Travelers Companies, Inc., but the parties executed a stipulation dismissing all claims without prejudice against that defendant. Dkt. #1, ¶¶ 7-8.

4

carry heavy loads." Id. at 3. Alauddin also noted that there were "no reinforcement bars or wire mesh" underneath the concrete slab and that there was "heavy storage material" kept in the area of the collapse. Id. Based on these observations, Alauddin concluded:

> [U]nsuitable, fine uncontrolled soil fill with debris was placed prior to new building construction and was poorly compacted in place, prior to initial pouring of the slab. Furthermore, moisture from the ground surface to 17' below combined with sub surface water pressure reduced soil density and created voids and pockets below the slab underside surface. The undersized slab thickness without the presence of proper gauge mesh reinforcement and lack of solid reinforcement bars in a proper matrix made for inadequate slab strength. Additionally, the existing below slab pier placement, considering these soil characteristics, was not dense enough for the heavy inventory loads at the time of the slab failure. As a resultant of slab failure and collapse the building is NOT structurally sound and is to remain vacant until the building is re-stabilized.

Id. at 4. Regarding the possibility that "earth movement" had caused the collapse, Alauddin wrote in his report:

> In my professional opinion earth movement did not cause failure or settlement. Normally, based on earthquake engineering analysis, earth movement occurs in a large radius such as city or regional boundaries. As a resultant of earth movement, such disturbance shall not happen to singular piece of land. As an engineering professional, I did not find any evidence of an earthquake or earth movement event on that particular structure as well as neighboring structures.

Id.

In an affidavit in support of plaintiff's summary judgment motion, Alauddin asserts that, in his professional opinion, the concrete floor collapsed due to "several specific factors . . . taken together." Alauddin Aff. ¶ 9.[2] He states that prior construction on the site was "negligently

---

[2] Defendant argues that the court should strike portions of Alauddin's affidavit that introduce facts and conclusions that were not included in Alauddin's expert report. Def.'s Mem. of Law in Supp. of Cross-Mot. for Summ. J. and in Opp'n to Pl.'s Mot. for Summ. J. ("Def.'s Mem."), Dkt. #42, at 8-9 n.3. I find, however, that the opinions expressed in Alauddin's affidavit are consistent with the findings stated in his report. To the extent that Alauddin includes opinions in his affidavit that were not explicitly stated in his report, these opinions, as discussed below, do not alter

5

performed" because "poorly compacted fine uncontrolled soil fill with debris" was placed under the concrete slab and the concrete slab was poured without reinforcement. Id. He states that "the heavy inventory loads placed directly in the vicinity of the depression" also contributed to the collapse. Id. Alauddin states, "I do not believe settlement was the primary cause of slab failure because the slab was undersized and unable to withstand against minimum live load of current use of building . . . . The primary cause was the defective construction and concentrated point load." Id. ¶ 10.

Plaintiff has also pointed to other evidence in the record to corroborate Alauddin's report. First, plaintiff provides affidavits from its employees to support Alauddin's observation that "heavy inventory loads" were stored in the area of the collapsed floor. Daniel Beyda, plaintiff's president, stated that company inventory records showed 554 auto axles in stock in December 2011, each weighing about 8 to 12 pounds, and all of the axles were "stored by the area of the collapse on metal pallet racking, which is a type of shelving used for heavy loads."Aff. of Daniel Beyda, Dkt. #34, Ex. 21, ¶ 9. Jack Beyda, who worked as plaintiff's on-site operations manager at the Pitkin Avenue Premises at the time, stated that the warehouse stored "hundreds" of auto rotors and drums on metal shelves "directly in the vicinity" of the collapsed section of the floor, with each drum weighing about 20 pounds or more. Aff. of Jack Beyda, Dkt. #34, Ex. 23, ¶ 10.

In addition, plaintiff provides an affidavit from Antonio Malanga, a general contractor who was hired by Daniel Beyda to perform repairs at the Pitkin Avenue premises in June 2013, including demolishing and removing the cracked concrete slab and excavating the soil. Aff. of Antonio Malanga, Dkt. #34, Ex. 24, ¶¶ 1, 3, 6-7.[3] Malanga states that, as he removed the

---

the outcome of the pending motions.
[3] Defendant argues that the court should strike Malanga's affidavit in its entirety because it contains statements and conclusions that were never disclosed in his expert report, which was limited to an estimate of damages. Def.'s Mem. 9. I find it unnecessary to address this evidentiary issue because the opinions expressed in Malanga's affidavit

concrete slab, he observed that the slab "had no reinforcement" under it, and "the fill underneath was unsuitable and uncompacted." Id. ¶ 7. As he continued excavating, he uncovered "large amounts of debris and fill that was placed there in an earlier construction or demolition," including "a water boiler, 55 gallon drum, refrigerator, sink, car tire, fire escape, pipes, bricks and what appeared to be metal window railings." Id. ¶ 8. Malanga states these types of items are "unsuitable fill to support a concrete slab." Id.

### B. Defendant's Expert Report

Defendant retained the engineering firm Simpson Gumpertz & Heger to investigate the cause of the collapse. Decl. of Milan Vatovec, Dkt. # 39, ¶¶ 1-2. In a report dated December 11, 2013, the engineering firm stated that the type of "slab-on-grade" concrete floor at the Pitkin Avenue Premises depends on soil below the concrete to support the concrete slab itself and any loads of people or items on top of it. Gill Decl., Ex. O, at 5, ECF 7. The report stated that "[i]f the soil subgrade is not properly prepared, has been disturbed, or is inadequate to carry the intended loading, subsidence and settlement of the soil can be expected," which can lead to displacement of the slab and can ultimately cause the slab to crack or collapse. Id.

The report found that, when the existing structure at the Pitkin Avenue Premises was built, the workers had filled in the cellar of a prior building on the site using "uncontrolled fill with pieces of concrete and red bricks." Id. This type of soil "would likely be prone to consolidation." Id. The report stated that "the soil subsidence likely increased in magnitude and extent until the unreinforced slab, subjected to in-service loads and gradually becoming more and more devoid of uniform support, collapsed." Id. at 5-6, ECF 7-8. While the report noted that heavy merchandise or shelving on top of the concrete floor would increase the likelihood of cracking or collapse, it also stated that "the observed soil subsidence would be sufficient to cause

---

do not alter the outcome.

7

slab failure, with or without the superimposed (e.g., merchandise and shelving) loads." Id. at 6, ECF 8. The report also stated that steel reinforcement under the slab would have improved its performance, but that a concrete slab of this size would not have been able to span the distance between the foundation walls without additional soil support, "regardless of the amount of reinforcement." Id. Defendant's expert report concluded: "The slab-on-grade failed because it lost the soil support from below. Had the soil not subsided, the slab would not have failed in such a manner. The soil below likely subsided over time because it was not properly compacted prior to the installation of the slab-on-grade." Id.

## DISCUSSION

### I.  Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The function of the court is not to resolve disputed factual issues but to determine whether there is a genuine issue to be tried. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "While genuineness runs to whether disputed factual issues can reasonably be resolved in favor of either party, materiality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (quoting Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996)) (internal quotation marks and ellipses omitted).

In assessing whether summary judgment is appropriate, the court considers "the pleadings, depositions, answers to interrogatories and admissions on file, together with any other firsthand information including but not limited to affidavits." Nnebe v. Daus, 644 F.3d 147, 156

(2d Cir. 2011) (quoting In re Bennett Funding Grp., Inc., 336 F.3d 94, 99 (2d Cir. 2003)); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The moving party carries the burden of proving that there is no genuine dispute respecting any material fact and "may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223-24 (2d Cir. 1994). Once this burden is met, in order to avoid the entry of summary judgment, the non-moving party "must come forward with specific facts showing that there is a genuine issue for trial." LaBounty v. Coughlin, 137 F.3d 68, 73 (2d Cir. 1998). In reviewing the record before it, "the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997).

## II.     Applicability of the Earth Movement Exclusion

Defendant argues that it is entitled to summary judgment because, as a matter of law, the Policy's earth movement exclusion precludes coverage of the damage resulting from the floor collapse. Plaintiff, in its motion for summary judgment, argues that the earth movement exclusion does not unambiguously apply to the type of damage at issue in this case and that other provisions of the Policy operate to provide coverage of plaintiff's claim. Based on review of the evidence submitted by both parties regarding the cause of the collapse, I agree with defendant that the earth movement exclusion bars coverage of the loss.

Under New York law, the ordinary rules of contractual interpretation apply to insurance policy contracts. Accessories Biz, Inc. v. Linda & Jay Keane, Inc., 533 F. Supp. 2d 381, 386

(S.D.N.Y. 2008). Accordingly, "an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract." Parks Real Estate Purchasing Grp. V. St. Paul Fire & Marine Ins. Co., 472 F.3d 33, 42 (2d Cir. 2006) (quoting Morgan Stanley Grp. Inc. v. New England Ins. Co., 225 F.3d 270, 275 (2d Cir. 2000)). "When the provisions are unambiguous and understandable, courts are to enforce them as written." Id.

"Whether a contract is ambiguous is a threshold question of law to be determined by the court." Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co., 411 F.3d 384, 390 (2d Cir. 2005). The New York Court of Appeals has stated that "[t]he law governing the interpretation of exclusionary clauses in insurance policies is highly favorable to insureds." Pioneer Tower Owners Ass'n v. State Farm Fire & Cas. Co., 908 N.E.2d 875, 877 (N.Y. 2009). The insurer bears the burden of establishing that "the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case." Belt Painting Corp. v. TIG Ins. Co., 795 N.E.2d 15, 17 (N.Y. 2003) (quoting Cont'l Cas. Co. v. Rapid-American Corp., 609 N.E.2d 506 (N.Y. 1993)). "[P]olicy exclusions are given a strict and narrow construction, with any ambiguity resolved against the insurer." Id. The exclusion "must be specific and clear in order to be enforced," and courts may not extend an exclusion "by interpretation or implication." Pioneer Tower, 908 N.E.2d at 877 (quoting Seaboard Sur. Co. v. Gillette Co., 476 N.E.2d 272 (N.Y. 1984)).

In this case, the Policy's earth movement exclusion clearly and unmistakably bars coverage for plaintiff's claimed losses. The provision states that the Policy does not cover loss or damage resulting from "[a]ny earth movement . . . whether natural or man made, including but not limited to earthquake, mine subsidence, landslide, or earth sinking, rising or shifting." Gill Decl., Ex. A, at ECF 28. All of the engineers who investigated the collapse at the Pitkin Avenue

10

Premises found that the concrete floor was built over improperly compacted soil that settled over time. McEvoy, who initially investigated the claim for defendant, stated in his report that the "uncompacted soil settled and created a void under the concrete slab." Gill Decl., Ex. D, at ECF 3. Defendant's expert found that the soil underneath the concrete slab subsided over time, likely "because it was not properly compacted," and the concrete "failed because it lost the soil support from below." Gill Decl., Ex. O, at 6, ECF 8. Plaintiff's own expert, Alauddin, found that "unsuitable, fine uncontrolled soil fill with debris" was "poorly compacted in place," then moisture and sub-surface water pressure "reduced soil density and created voids and pockets below the slab underside surface." Grossman Decl., Ex. I, at 4. While the experts use different terminology, they all agree that the soil settled and created "voids" under the concrete floor. Since soil settlement is a type of "sinking, rising or shifting" of the earth, it falls within the unambiguous terms of the exclusion. See Alamia v. Nationwide Mut. Fire Ins. Co., 495 F. Supp. 2d 362, 367 (S.D.N.Y. 2007) (finding that soil erosion or settlement "indisputably involves the 'movement,' or more precisely, the 'shifting' or 'sinking' of the earth").

Plaintiff nevertheless argues that the earth movement exclusion in the Policy is ambiguous and does not clearly and unmistakably apply to damage caused by soil settlement. In support of this contention, plaintiff argues that some earth movement exclusions in other cases have included language that specifically refers to soil settlement. See Bentoria Holdings, Inc. v. Travelers Indem. Co., 980 N.E.2d 504, 504 (N.Y. 2012) (earth movement includes "soil conditions which cause settling, cracking or other disarrangement of foundations"); Brice v. State Farm Fire & Cas. Co., 761 F. Supp. 2d 96, 100 (S.D.N.Y. 2010) ("Earth movement includes . . . subsidence, erosion or movement resulting from improper compaction, site selection or any other external forces."). Therefore, plaintiff argues, if defendant wanted its policy to

exclude coverage for damage due to soil settlement from improperly compacted soil, it should have included that in its list of examples of earth movement. Pl.'s Mem. of Law in Supp. of Mot. for Summ. J. & Declaratory J. ("Pl.'s Mem."), Dkt. #34, Ex. 25, at 13-15. Plaintiff concedes that the Policy's earth movement exclusion includes the catch-all phrase "including but not limited to" the examples listed. However, plaintiff argues that, under the interpretive canon of ejusdem generis, the catch-all phrase should be read to refer only to "large scale, catastrophic earth disturbances" that are similar to earthquakes, landslides, and the other examples listed. Id. 11-13.[4] Apparently adopting this understanding of the term "earth movement," plaintiff's expert Alauddin opined in his report that "earth movement occurs in a large radius such as city or regional boundaries" and that he "did not find any evidence of an earthquake or earth movement event" at the site. Grossman Decl., Ex. I, at 4.

Plaintiff's argument is unpersuasive, because numerous courts applying New York law have held that similar earth movement exclusions unambiguously apply to damage caused by the settling or erosion of the earth under a single structure. In Alamia, the court found that a virtually identical earth movement exclusion barred coverage for damage caused by a sewage pipe leaking under the plaintiff's home. 495 F. Supp. 2d at 466-69. The insurer's engineer concluded that the "inadequately compacted" soil in the house's foundation had settled, causing the break in the pipe, while the plaintiff's engineer found that the broken pipe had caused the "erosion and settlement of the earth." Id. at 365. The court held that, since both parties' experts agreed that

---

[4] In support of this assertion, plaintiff relies on Barash v. Insurance Company of North America, 451 N.Y.S.2d 603 (Sup. Ct. 1982). In that case, a basement floor collapsed because "unsuitable fill" under the concrete slab deteriorated over the years and "created voids." Id. at 604. The court held that the earth movement exclusion at issue should be read to apply only to "sudden catastrophic events that normally affect more than one plot of land," not to gradual deterioration of the soil below a single house. Id. at 607. While the facts leading to the floor collapse in Barash are certainly comparable to the facts here, the language of the earth movement exclusion in that case was materially different from the language here, and the insurer had not even invoked that exclusion until later in the litigation. Id. at 604-05. Therefore, I see no reason to follow Barash rather than the more recent, appellate-level authority that renders the earth movement exclusion applicable to this case.

12

erosion and settlement of the earth had caused the damage, it was "beyond doubt" that the earth movement exclusion "clearly and unambiguously" barred coverage. Id. at 367; see also Labate v. Liberty Mut. Ins. Co., 847 N.Y.S.2d 128, 130 (App. Div. 2007) (granting summary judgment for insurer where "[t]he defendant's expert and the plaintiff's own engineers . . . all opined that the property damage was caused directly or indirectly by earth movement and settlement"); Cali v. Merrimack Mut. Fire Ins. Co., 841 N.Y.S.2d 128, 129-30 (App. Div. 2007) (earth movement exclusion barred coverage for damage to house when "concrete slab foundation . . . settled, sank, and cracked"); Sheehan v. State Farm Fire & Cas. Co., 658 N.Y.S.2d 61, 62 (App. Div. 1997) (earth movement exclusion barred coverage for damage caused by "the decomposition of buried organic materials" in the ground under house's foundation); Nowacki v. United Servs. Auto. Ass'n Prop. & Cas. Ins. Co., 588 N.Y.S.2d 224, 225 (App. Div. 1992) (earth movement exclusion barred coverage for damage due to soil erosion). Therefore, contrary to Alauddin's understanding in his report, defendant does not have to demonstrate that a large-scale event akin to an earthquake occurred in order to invoke the earth movement exclusion. Instead, the weight of authority makes clear that the earth movement exclusion at issue in this case encompasses damage to a single property caused by soil settlement.

Plaintiff also cites several cases in which courts found that earth movement exclusions did not bar recovery for damage caused by excavation on neighboring properties that caused earth to slide away under the plaintiffs' properties. See Pioneer Tower, 908 N.E.2d at 877; Lee v. State Farm Fire & Cas. Co., 822 N.Y.S.2d 559 (App. Div. 2006); Burack v. Tower Ins. Co. of N.Y., 784 N.Y.S.2d 53 (App. Div. 2004). Yet these cases are inapposite because the exclusions at issue in these cases only listed examples of earth movement due to natural causes, so the courts applied the rule of strict construction of exclusionary provisions and held that intentional

13

earth removal by humans did not fall within the exclusions. By contrast, the New York Court of Appeals has decisively held that a policy exclusion that applies to earth movement "whether naturally occurring or due to man made or other artificial causes" bars recovery for damages due to excavation on adjacent lots. Bentoria Holdings, 980 N.E.2d at 504; accord Scottsdale Ins. Co. v. LCB Construction LLC, No. 11-CV-3316 (ARR)(JMA), 2012 WL 1038829, at *4 (E.D.N.Y. Feb. 14, 2012), adopted by 2012 WL 1041455 (E.D.N.Y. Mar. 28, 2012); Brice, 761 F. Supp. 2d at 102. Similarly, the earth movement exclusion here, which applies to "[a]ny earth movement . . . whether natural or man made," unambiguously bars recovery for damage due to soil settlement, even where humans may have created the conditions leading to the settlement through improper compaction or the use of unsuitable fill.

Finally, plaintiff argues that the evidence at least creates a triable issue of fact regarding whether soil settlement did in fact cause the collapse of the concrete floor. Plaintiff's expert Alauddin states in his affidavit that he does not "believe settlement was the primary cause of slab failure." Alauddin Aff. ¶ 10. Instead, plaintiff argues, the evidence shows that the "proximate, efficient and dominant cause of the collapse" was the negligent construction of the concrete floor, using uncompacted soil and insufficient reinforcement, combined with the heavy loads placed on top of the floor. Pl.'s Mem. 8. Plaintiff argues that Alamia is distinguishable because both parties' experts agreed in that case that soil settlement caused the damage, but here, Alauddin's expert opinion "[a]t the very least . . . creates a question of fact as to the issue of causation." Pl.'s Decl. in Opp'n to Cross-Mot. & Reply in Supp. of Mot. for Summ. J. ("Pl.'s Reply"), Dkt. #7, ¶ 18.

The differences of opinion between plaintiff's and defendant's experts are insufficient to defeat defendant's motion for summary judgment. The Policy's earth movement exclusion

includes language commonly referred to as an "anti-concurrent clause," which states that loss or damage due to earth movement is not covered "regardless of any other cause or event that contributes concurrently or in any sequence to the loss." Gill Decl., Ex. A, at ECF 28. Accordingly, in order to bar coverage under the earth movement exclusion, defendant need only show that soil settlement was "at least a contributing cause of the damage." Alamia, 495 F. Supp. 2d at 368. Here, even if Alauddin found that settlement was not the "primary cause" of the collapse, his own report stated that the "unsuitable" and "poorly compacted" soil became less dense, creating "voids and pockets" underneath the concrete. Grossman Decl., Ex. I, at 4. According to both plaintiff's and defendant's expert reports, therefore, soil settlement was at least a contributing cause of the collapse. Even if plaintiff could show that defective construction and heavy loads primarily caused the collapse, as Alauddin asserted, and even if those causes of damage were covered by the Policy, the earth movement exclusion would still bar recovery. Courts have held that earth movement exclusions with anti-concurrent clauses unambiguously bar coverage for "damages resulting from earth movement even though the cause of the earth movement is a covered peril." Kula v. State Farm Fire & Cas. Co., 628 N.Y.S.2d 988, 991 (App. Div. 1995) (holding that earth movement exclusion barred coverage where broken pipe caused soil under plaintiff's home to wash away); see Cali, 841 N.Y.S.2d at 130 (holding that coverage was precluded even where earth movement was "precipitated, at least in part, by decayed wood in the earth beneath the foundation slab").[5]

---

[5] In making the argument regarding causation, plaintiff relies on several cases where the policies at issue did not include anti-concurrent clauses. In those cases, the policies excluded damage "caused by or resulting from" specified events, so the courts had to analyze whether an excluded event was the proximate or dominant cause of the loss. See Album Realty Corp. v. Am. Home Assur. Co., 607 N.E.2d 804, 804-05 (N.Y. 1992) (where policy excluded damage "caused by" temperature extremes, court had to analyze whether freezing of sprinkler head was "proximate, efficient and dominant cause" of flooding and water damage); Home Ins. Co. v. Am. Ins. Co., 537 N.Y.S.2d 516, 517 (App. Div. 1989) ("The phrase 'caused by . . . [or] resulting from' in reference to an excluded peril requires that the insurer prove that the excluded peril . . . is the proximate cause of the loss."). Here, where the Policy includes an anti-concurrent clause, there is no need for the court to undertake this causation inquiry. See Kula, 628 N.Y.S.2d at 991

Accordingly, defendant has met its burden of establishing that the earth movement exclusion of the Policy clearly and unmistakably applies in this case. Even under the strict and narrow construction of policy exclusions, numerous courts have held that similar earth movement exclusions unambiguously apply to damage caused by soil settlement underneath a structure. Here, both plaintiff's and defendant's expert reports agree that soil settled underneath the concrete slab and caused voids. Regardless of whether other factors such as negligent construction or heavy loads may have also played a role in the collapse, there is no dispute that soil settlement was a contributing factor, which is all that is required under the Policy's anti-concurrent clause. Therefore, it is unnecessary to address the parties' arguments regarding other provisions of the Policy. Since the earth movement exclusion bars coverage as a matter of law, defendant is entitled to summary judgment dismissing plaintiff's claim.

### III. Plaintiff's Breach of Contract Claim

In addition to seeking a declaratory judgment regarding coverage under the Policy, plaintiff's complaint also asserts a cause of action for breach of contract. Plaintiff alleges that defendant breached the insurance contract by failing to pay the claim for the damage caused by the collapse of the floor at the Pitkin Avenue Premises. Compl., Dkt. #1, at ECF 18-19. The complaint seeks damages in excess of $100,000 on the breach of contract claim. Id. To the extent that plaintiff's breach of contract claim is merely a claim for coverage under the Policy, it must be dismissed because, for the reasons stated above, the earth movement exclusion bars coverage of the claimed losses as a matter of law.

In plaintiff's moving papers, however, plaintiff appears to frame the breach of contract

---

(while some jurisdictions have adopted the "efficient proximate cause doctrine," "New York has no such legislation that would circumvent the" anti-concurrent clause of the policy).

claim differently, asserting that defendant breached the implied covenant of good faith and fair dealing by failing to "fully and fairly investigate the claim." Grossman Decl. ¶¶ 33-34. Specifically, plaintiff asserts that defendant failed to conduct an analysis of the soil under the collapsed concrete slab to determine where it came from, failed to investigate prior construction on the site, and failed to consider whether the weight of inventory stored on the floor had contributed to the collapse. Pl.'s Reply ¶¶ 9-11. In response, defendant argues that plaintiff's assertions are "conclusory" and "belied by the record." Def.'s Mem. of Law in Supp. of Cross-Mot. for Summ. J. and in Opp'n to Pl.'s Mot. for Summ. J., Dkt. #42, at 1 n.1. Instead, defendant argues that it conducted a thorough investigation of plaintiff's claim, including site inspections, conversations with plaintiff and plaintiff's insurance adjuster, and an internal review. Id.

While the parties only address the breach of contract claim cursorily in the briefs on the pending summary judgment motions, I find that defendant is entitled to summary judgment dismissing this claim. Plaintiff argues that the investigation, if conducted properly, would have shown that plaintiff was entitled to coverage under a provision of the Policy that covers loss due to the "collapse of buildings or structures if caused only by" either the "[w]eight of people or personal property" or the "[u]se of defective material or methods in construction." Gill Decl., Ex. A, at ECF 28. For the reasons already stated, defendant properly denied plaintiff's claim under the separate earth movement exclusion, so it is irrelevant whether the collapse of building provisions apply to plaintiff's claim. Since plaintiff cannot show any harm from any alleged deficiencies in the investigation, the breach of contract claim is dismissed.

## CONCLUSION

For the foregoing reasons, I conclude that the Policy's earth movement exclusion precludes coverage as a matter of law for the losses incurred as a result of the collapse of the concrete floor at the Pitkin Avenue Premises. Plaintiff's motion for summary judgment is denied. Defendant's motion for summary judgment is granted, and the action is dismissed in its entirety. The Clerk of Court is directed to enter judgment and close the case.

SO ORDERED.

                                              __/s/_____
                                              Allyne R. Ross
                                              United States District Judge

Dated:        August 13, 2014
               Brooklyn, New York